**Alexander TAYLOR, Plaintiff,**

v.

**MCI, INTL., Teamster Local 111, ACA, UNUM Life Insurance Company of America, Defendants.**

**No. 00 Civ. 7920(JES).**

United States District Court, S.D. New York.

Aug. 1, 2002.

Alexander Talyor, New York City, Pro Se.

Piper Rudnick, LLP, Attorneys for MCI Int'l, New York City, Amy W. Schulman, Dana C. Lumsden, of Counsel.

Begos & Horgan, LLP, Attorneys for UNUM Life Insurance, Bronxville, NY, Patrick Begos, of Counsel.

Vladeck, Waldman, Elias & Engelhard, Attorneys for Teamster Local 111, New York City, Karen Honeycutt, of Counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff *pro se* Alexander Taylor ("plaintiff") brings the above-captioned action against MCI International ("MCI"), Local 111, International Brotherhood of Teamsters ("Local 111"), and Unum Life Insurance Company of America ("UNUM") (collectively, "defendants"). Plaintiff alleges that defendants discriminated against him on the basis of his race, age, and mental disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York City Human Rights Law, 792 NYC 8–31–91, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.* Plaintiff further alleges discriminatory acts in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Following plaintiff's submission of a second amended complaint, defendants made a pre-answer motion to dismiss all claims pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendants' motion.

## I. BACKGROUND

MCI employed plaintiff as a General Operator I from 1968 to 1993. Throughout his employment, plaintiff continually suffered from psychiatric symptoms and received sporadic treatment at Gracie Square Hospital. Additionally, plaintiff was diagnosed with cancer of the tonsillar region in July 1995. The tonsillar cancer, combined with side effects of radiation therapy, aggravated Taylor's long-standing psychiatric illness rendering him "functionally significantly impaired." *See* Taylor Opposition to UNUM America's Brief In Support of Motion To Dismiss dated February 28, 2002, Exh. H. Plaintiff claims that his disability, coupled with his employer's discriminatory practices, forced him to retire on or about September 27, 1995. *See* Amended Complaint dated March 13, 2002 ("Amended Complaint") at ¶ 10.

At an unspecified date thereafter, plaintiff applied to UNUM for disability benefits. *See* Amended Complaint at ¶ 5. According to plaintiff, UNUM made disability payments for a period ranging from seventeen (17) to twenty-four (24) months between 1993 and 1995. *See* Amended Complaint at ¶¶ 8, 10–11, 17. In 1995, UNUM cancelled plaintiff's disability benefits.

On January 17, 1995, plaintiff filed charges with both the New York City Commission on Human Rights and the EEOC against Local 111 and union representative Walter Matthies claiming violations of Title VII and the ADA based on his alleged disability. *See* Plaintiff's Amended Complaint dated July 12, 1996, *Taylor v. Local 111, MCI International, Inc. and UNUM Life Insurance of America,* 96 Civ. 0614 (S.D.N.Y. June 22, 2000) (JES) ("*Taylor I*"). On November 1, 1995, the EEOC issued a right to sue letter with respect to plaintiff's Title VII and ADA claims against Local 111. Neither the charge nor the right to sue letter mentioned MCI or UNUM. The EEOC informed plaintiff that he had ninety (90) days from the date of receipt to file a private action in U.S. District Court.

On or about January 4, 1996, plaintiff filed a complaint with the *Pro Se* Office of the United States District Court for the Southern District of New York (*"Pro Se* Office"), alleging that Local 111 violated Title VII and ADA. On July 12, 1996, plaintiff filed an amended complaint with the *Pro Se* Office naming MCI as a new defendant. On or about September 5, 1996, fifty-six (56) days after filing his *Taylor I* complaint against MCI, plaintiff filed a charge of discrimination with the EEOC against MCI. The EEOC complaint alleged discrimination based on petitioner's disability and in violation of ADA. The EEOC dismissed plaintiff's charge as untimely.[1] *See* Affidavit of Amy W. Schulman dated April 28, 1999 ("Schulman Affidavit"), Exh. N.

On or about October 16, 1998, plaintiff filed an amended complaint against Local 111, MCI, and UNUM[2] alleging discrimination in violation of Title VII based on his race and disability. He also alleged violations of the ADA and Age Discrimination in Employment Act of 1967 ("ADEA"). Plaintiff had not made race discrimination or ADEA charges in his initial EEOC claim and was never issued a right to sue letter for these causes of action. Defendants then filed a motion for summary judgment in *Taylor I.*

 In a summary order dated June 15, 2000 ("the summary order"), this Court dismissed all of plaintiff's federal claims against Local 111. These claims were dismissed for a number of reasons. First, plaintiff failed to exhaust his administrative remedies with respect to his Title VII

race discrimination claim and his age discrimination claim by not alleging facts to support those claims before the EEOC. *See* Schulman Affidavit, Exh. H, EEOC charge against Local 111; *Butts v. City of New York Dep't of Housing Pres. and Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Second, plaintiff presented no evidence to show that Local 111 breached its duty of fair representation and therefore discriminated against him based on his disability. A union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion; however, individual employees do not have an absolute right to arbitration. Quite simply, when a union, after a good faith investigation of the merits of the grievance, concludes that the claim is unsubstantial, and refuses to encumber further its grievance channels by continuing to process an nonmeritorious claim, its duty of fair representation is satisfied and no claim against it may be brought. *See Nweke v. Prudential Ins. Co. of America,* 25 F.Supp.2d 203, 220 (S.D.N.Y.1998). Plaintiff brought forth no evidence to show that Local 111 deviated from this standard. After conducting it's own investigation, Local 111 determined that plaintiff's claims were meritless. To counter this claim, plaintiff provided only conclusory statements that Local 111 acted arbitrarily, discrimatorily or in bad faith. Moreover, because plaintiff failed to provide any evidence that Local 111 treated him differently than similarly situated individuals due to his race, age, or disability, his Title VII claim was also dismissed.

---

**1.** Specifically, the EEOC determined, and the parties do not dispute, that the complained of acts occurred more than 300 days prior to the filing of the EEOC charge; the Second Circuit has held that, when a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred in the district court and may not proceed. *See Butts v. City of New York Dep't*

*of Housing Preservation and Development,* 990 F.2d 1397 (2d Cir.1993).

**2.** On October 13, 1998 plaintiff filed a third—and likewise untimely—charge with the EEOC claiming race and disability discrimination by MCI and UNUM. *See* Amended Complaint, EEOC Charge Exhibit.

■ The summary order also granted summary judgment in favor of MCI. Plaintiff's claims against his former employer were also insufficient in a number of ways. First, plaintiff's failure to file a timely charge of discrimination with the EEOC rendered all of his claims against MCI time-barred. *See Butts*, 990 F.2d at 1401. Moreover, plaintiff's timely filing of an EEOC complaint against Local 111 was not sufficient to render his claims against MCI timely, because there was no "identity of interest" between those two (2) defendants. In other words, the four (4) factor test used to determine if an "identity of interest" exists did not warrant a finding of timeliness. Under this test the court considers: (1) whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar to the interests of the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be necessary to include the unnamed party in the EEOC proceedings; (3) whether the absence of the unnamed party from the EEOC proceedings resulted in actual prejudice to that party's interests; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *See Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir.1991).

Plaintiff, has failed to meet any part of this test. MCI was neither named as a respondent in the charge plaintiff filed with the EEOC against Local 111 nor in the right to sue letter the EEOC issued against Local 111. MCI's identity was not a mystery to the plaintiff as it was his employer for approximately twenty-seven (27) years. Plaintiff's history of prior proceedings demonstrated that he was aware that a preliminary filing with the EEOC

was necessary. It was also clear that the interests of MCI, as plaintiff's employer, and Local 111, as his union, were sufficiently dissimilar to preclude the application of the "identity of interest" doctrine, nor could MCI's interests have been prejudiced by the fact that they were not a party to the proceedings. Therefore, the Court dismissed all federal claims against MCI in *Taylor I*.

The Court similarly dismissed all of plaintiff's federal claims in *Taylor I* against UNUM because: (1) plaintiff failed to file a timely charge of discrimination with the EEOC, *see Butts*, 990 F.2d at 1401; (2) plaintiff offered no evidence to support an equitable tolling of the limitations period; (3) UNUM could not be sued under the ADA, Title VII, or the N.Y. Human Rights Law because UNUM was not plaintiff's employer; and (4) the distinction between benefits for physical and mental disabilities in UNUM's policy did not violate the ADA, even if that act was applicable. *See EEOC v. Chase Manhattan Bank*, 1998 WL 851605 (S.D.N.Y. December 7, 1998).

The Court also dismissed plaintiff's state claims without prejudice to being renewed in an appropriate state court proceeding.

Plaintiff subsequently initiated the instant action in state court on August 8, 2000, alleging violations identical to those made in his first action; plaintiff added to these claims an alleged ERISA violation. Defendant properly removed the case to Federal District Court. On or about June 6, 2001, plaintiff filed an amended complaint in Federal District Court alleging violations of ADA, Title VII, and ERISA. *See* Amended Complaint at ¶ 1. The instant complaint, like the previous complaint in *Taylor I*, asserts that Union representative Mr. Matthies discriminated against plaintiff because of his disability by subjecting him to disparaging treatment,

"including but not limited to refusing to represent plaintiff on his mental illness disability claims against his employer." *See* Amended Complaint at ¶¶ 21–24, 34. Plaintiff seeks five (5) million dollars in punitive damages from Local 111 for "their failure to protect [plaintiff's] interest, including [plaintiff's] mental, physical, emotional and financial interests." *See* Amended Complaint at ¶ 4.

Plaintiff further asserts, again in a claim identical to the one made in *Taylor I*, that UNUM either: (a) improperly deducted or forced him to pay premiums while he was disabled; (b) overpaid benefits and then deducted the overpayment too quickly; or (c) did not pay the monthly benefits to which he was entitled. *See* Taylor Opposition to UNUM America's Brief In Support of Motion to Dismiss Taylor Complaint dated February 28, 2002, ("Taylor Opposition") at 2–4. Plaintiff seeks four (4) million dollars from UNUM in punitive damages for their "intentional refusal to pay [plaintiff] appropriated benefits that [to which he is] entitled." Taylor Opposition at 5.

Plaintiff also claims, as he did in *Taylor I,* that MCI discriminated against him based on his race, age and disability. This alleged discrimination by his employer supposedly caused plaintiff to become mentally disabled. *See* Complaint at ¶¶ 2, 4, 19. Moreover, according to plaintiff, from 1984 to 1993 plaintiff's mental condition was aggravated by disparate treatment by his coworkers. Plaintiff seeks ten (10) million dollars from MCI in punitive damages arising out of its "intentional willful action that was designed to cause [plaintiff] great emotional, mental and physical stress," as well as $1,636.00 for premiums paid to plaintiff's insurance policy during his disability. *See* Amended Complaint at ¶ 4

Defendants deny all of plaintiff's contentions and argue primarily that all of his federal claims are barred by the doctrine of *res judicata.*

## II. DISCUSSION

A court may grant summary judgment only if it determines, based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, that there are no genuine issues of material fact. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### A. Plaintiff's Federal Claims are Barred by the Doctrine of Res Judicata

Despite the Court's duty to "read the pleadings of a *pro se* plaintiff liberally and interpret them to raise the strongest arguments that they suggest," *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotations omitted), the Court may not exempt plaintiff from the doctrine of *res judicata. See, e.g., Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205–06 (2d Cir.2002) (applying *res judicata* to dismiss *pro se* plaintiff's action). " 'Res judicata assures the finality of judgments by precluding a party to a lawsuit from litigating a claim more than once.' " *See El–Bey v. City of New York,* 151 F.Supp.2d

285, 294 (2001) (quoting *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 (2d Cir.1995)) The doctrine takes effect when: (a) there exists an adjudication on the merits in a prior law suit; (b) the prior lawsuit involved the party to be precluded or a party in privity with that party; and (c) the claims sought to be precluded were raised, or might reasonably have been raised in a prior lawsuit. *Id.*

■ All three (3) of these requirements are met in the instant case. The Court's dismissal of all federal claims with prejudice and dismissal of all state claims without prejudice constitutes an adjudication on the merits. *See Chase Manhattan v. Celotex,* 56 F.3d 343, 345 (2d Cir.1995). Taylor is the plaintiff in both lawsuits and, with the exception of his ERISA claim, his complaints in the two (2) cases are identical. In his first lawsuit, plaintiff alleged violations of Title VII, ADA, and ADEA. *See Taylor I,* Amended Complaint at ¶ 1. These claims were adjudicated on the merits. Plaintiff then brought a second case alleging violations of Title VII, ADA, ADEA, ERISA and "applicable state law" based on the same facts described in the *Taylor I. See* Amended Complaint at ¶ 1. Thus *res judicata* bars the first three (3) claims as all of them have already been dismissed on the merits against plaintiff. *Res judicata* also precludes the alleged ERISA violation because that claim is based on the same underlying facts alleged in *Taylor I* and could reasonably have been raised in that proceeding. *See id.* Thus, plaintiff's federal claims must be and are hereby dismissed pursuant to the doctrine of *res judicata.*

## B. ERISA Pre-emption

■ Plaintiff alleges violations of state law in the introductory paragraph of his complaint. *See* Amended Complaint at ¶ 1. To the extent plaintiff claims defendants acted in derogation of his rights under an employee benefits plan, such claims are pre-empted by ERISA. A state law action is preempted by ERISA if it has a clear "connection with" a plan in the sense that it "mandates employee benefit structures or their administration" or "provides alternative enforcement measures." *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co.,* 126 F.3d 61, 66 (2d Cir.1997).

Plaintiff, in his complaint, claims that defendants withheld benefits to which he was entitled. Amended Complaint at ¶¶ 8, 16, 17. However, ERISA preempts the state law statute cited because it mandates the administration of employee benefits. Any state statute that could conceivably be cited by plaintiff in regard to receipt of benefits is necessarily preempted by ERISA and it follows that since any claims based on the distribution of benefits are federal claims they could and should have been raised in the prior proceedings, and as such, are barred by *res judicata.*

## C. State Law Claims

■ Finally, having dismissed plaintiff's federal causes of action, the Court declines to exercise its discretion to consider plaintiff's state law discrimination claims. *See Carnegie–Mellon v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *accord In re Porges,* 44 F.3d 159, 162 (2d Cir.1995) (court is "not required to dismiss [plaintiff's] state claims [but] dismissal of such claims is the general rule"). The Court therefore dismisses these claims without prejudice to being renewed in the appropriate state court venue.

## III. CONCLUSION

For the foregoing reasons the Court grants defendants' motion for summary judgment and dismisses all of plaintiff's claims. The Clerk of the Court is hereby

directed to close the above captioned action.

It is **SO ORDERED.**